M’Girk, C. J.,
delivered the opinion of the Court.
Cleaveland, to the use of Case and Marks, brought an action of debt on a bond, before a Justice of tlie Peace, where judgment was rendered for Davis. An appeal was taken to the Circuit Court. On the trial in the Circuit Court, the plaintiff gave his bond in evidence. The defendant then proved by John Chandler, thai after the suit was brought Cleaveland told Chandler, the bond sued on was given to secure the payment of the sum therein mentioned for a clock, sold by Cleaveland to Davis. This testimony was objected to by the plaintiff’s counsel. The Court permitted the testomony to go to the jury. The defendant gave in evidence a written agreement, not under seal, made by Cleaveland of the same date of the bond sued on, to Davis, by which agreement Cleaveland acknowledged he had sold a clock to Davis, which he warranted to be a good time piece for two years, and if it should fail to be a good time piece, he promised to make it good by repairing it or putting another in its place. This paper was objected to as evidence, but admitted by the Court. The defendant also proved that the clock ran about five months of the time and then failed to run and keep time.
There was no evidence that Cleaveland ever came to repair the clock, or that he put another in its place.
On this state of testimony, the Court instructed the jury, that they must decide between the parties according to what “ they might think was right and equitable.” The juiy found a verdict for the defendant.
A motion was made by the plaintiff for a new trial and overruled.
The first question to he considered is, did the Court err in admitting Chandler’s testimony. "We are of opinion the Court erred on this point. The record shows thüt *235 before the suit was brought, Cleaveland bad endorsed this bond away to Case and Marlas.
The law is clear enough, that no admissions made by a person after he has parted with his interest in a bond or note, can be jeceived in evidence in prejudice of his assignee. This principle of law applies to this testimony. The testimony should have been excluded from the jury. When this evidence is excluded, there is no evidence to show that the consideration of the bond sued on, was the clock mentioned in Cleaveland’s agreement of warranty. The error above is sufficient to reverse the judgment. There is, however, another point, on which the counsel on both, sides are anxious to have an opinion y which point arises out of the instructions given by the Court to the jury.
The instruction given was, that the jury should decide between the parties according to what they might think was right and equitable. To sustain the correctness of this instruction, Mr. Jamison for Davis, relies on an act of the General Assembly, passed 18th January, 1831, which act provides, that hereafter it shall and may be lawful for any Justice of the Peace within this State, when any cause is pending before him, to hear and determine all such actions according to equity and good conscience, in a summary way, &c., and it is hereby declared to be the duty of such Justice to give judgment according to right and justice .between the parties. The second section of the act provides, that when an appeal is taken to the Circuit Court, it shall give judgment and try the cause in the same way as above provided. Mr. Jamison contends that this act not only justifies the instruction the Court gave, but also warranted the Court in letting the unsealed instrument of Cleaveland go in evidence.to show the consideration of the bond had failed.
Messrs. Chambers, Wells and Campbell contend on the other side, that this act can have no effect, without farther legislation.. That the act is merely declaratory of the old law j that to-give the act the effect contended for by the other side, would he to-erect every Justice of the Peace into a Chancery Court: that this construction will in.effect repeal all laws respecting Justices of the Peace, will let them Iqose from all rules of law, substituting therefor, each Justice’s own private notions of right and wrong, and that it is not to be supposed the Legislature could intend to do this.
We hold the true construction of the act is this :
First. That by it the rules of evidence-are not in.the slightest degree altered.
That if before-the passage of the act, parol evidence on a trial at law could-not be-admitted to show that the consideration of a. bond had failed, such evidence-cannot be admitted since, to that point;; that evidence before deemed by law incompetent, is still so. We hold that the Justices are, since the passage of the act, as much bound to proceed according to the rules of law, both, in admitting testimony and giving judgment,.as they were-before the passage of the act, with this-single exception, that when testimony which is competent and relevant shall be heard by him,, shall raise a defence which the strict rules of law would not admit to be a defence in law, yet,if such defence would be good in equity and good conscience, it shall he allowed, disregarding the strict legal objections. What will be a good equitable defence, when legally proved, is now about as well known to our jurisprudence, as it is certain what is a good legal defence.
The statute requires that the cause shall be heard and determined according to equity and good conscience, and then it says, judgment shall be given according to right and justice. What the Legislature mean by requiring the cause to be heard and. *236 determined according to- equity and good conscience, .is not entirely certain. W® cannot believe they intend the cause should be proceeded in according to the known course in Chancery proceedings. That course requires pleadings the defendant must answer on oath, &c., but by the act there shall be .no pleadings. We are of opinion that by the above words, the Legislature require that-whena Justiceis trying a cause if legal testimony shall raise an equitable defence, such testimony shall be considered of, for the purpose of establishing such defence ; and if in the opinion of the Justice such, defence is proved, it then becomes his duty to determine on such defence, whether in equity and good conscience it is sufficient to defeat the plaintiff’s claim. And m making this determination he is to.be governed by the equity law of the land. And it is not sufficient that his determination should be honest and. upright; but it must be according to the known and established rules of right and wrong, fixed by the general laws of the land for the ascertainment of every citizen’s right. If it were not so, but the Justice’s mere notion of equity and good conscience is to be the rule of decision with him, then his judgment could not be reversed by,a.superior tribunal. Upon this principle the Supreme Court could not and ought not to reverse one of these cases tried-and adjudicated on by the Circuit Court, for the law requires that Court to proceed in such case in the same way required of the Justice. If then the Circuit Court should give a judgment contrary to the equity and Chancery law of the land, yet it would be good if it appeared that the judgment was according to his view of equity and good conscience j and that would be the only point of inquiry. We cannot believe that the Legislature of the country intend to feed the citizens on the mere husks and chaff of the law, instead of the substance, nor do we think they intend to substitute the variant notions of.equity and good conscience of the many Justices of the Peace in the State, in place of the known and fixed rules of equity known to the law of the land. The instructions given are too indefinite to be sustained. The judgment is reversed, and cause remanded for a new trial.